## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        No. 1:19-CR-402-WJ

KEITH CARTER,

    Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND RECONSIDERATION

THIS MATTER IS BEFORE THE COURT on Defendant Keith Carter's *pro se* Emergency Motion for Compassionate Release and Reconsideration of Previously Denied Motion (**Doc. 90**). The Court, having reviewed the briefing[1] and considered the applicable law, finds that the Motion is not well-taken and is therefore **DENIED**.

### BACKGROUND

In March of 2020, Defendant pleaded guilty to being a felon in possession of a firearm and was sentenced to 46 months imprisonment. (Doc. 83). Defendant is currently incarcerated at FCI Butner Medium II ("Butner"), a facility run by the Bureau of Prisons (the "BOP"). In June 2020, Defendant filed his first *pro se* motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) ("compassionate release") and release to home confinement. The Court denied Defendant's June motion on two different grounds. First, Defendant's request to be placed in home confinement in North Carolina was denied because the Court found it lacked authority to designate the place of a prisoner's confinement. Doc. 88 at 2–3. Second, the Court denied Defendant's

---

[1] The briefing on this matter consists of Defendant's Motion (Doc. 90), the Government's Response (Doc. 91), and Defendant's Reply (Doc. 92).

request for compassionate release due to his failure to exhaust administrative remedies. *Id.* at 3–4. Defendant filed the instant motion on December 14, 2020, in which he now asks the Court to reconsider its prior denials of relief, or, in the alternative, order similar forms of relief based on his new arguments.

## DISCUSSION

As a threshold matter, the Court notes that because Defendant is *pro se*, the Court must give liberal construction to his motion.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### I.      Defendant's motion for reconsideration

Defendant has not established circumstances that would allow the Court to reconsider its prior denial of his June request for home confinement in North Carolina. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.") (citations omitted). Further, the motion for reconsideration is moot to the extent it asks the Court to review its prior denial of Defendant's June request for compassionate release. This denial was based on Defendant's failure to exhaust his administrative remedies, a defect that is cured in the instant motion. Defendant now shows the Court that he made a request to the warden of his facility on either October 1 or 2, 2020, and Defendant represents that 30 days passed without receiving a reply. Doc. 90 at 5–6. The Government concedes that Defendant has exhausted his administrative remedies. Doc. 91 at 6. These circumstances allow the Court to consider Defendant's request for compassionate release anew without having to resort to reconsideration of a previous decision.

## II.    Defendant's request for confinement at a halfway house

Defendant now asks that he be immediately released to Dismas Charities, Inc. (d/b/a Diersen Charities), an organization that operates a halfway house in Albuquerque, NM. Doc. 92 at 8. Defendant represents that he will be placed at Diersen once released, and that his release date is currently set for May 5, 2021, *see* Doc. 92 at 7–8. He believes that extra time at a halfway house would better facilitate his reintegration into society and would allow him to protect himself against a "second exposure" to the COVID-19 virus.[2] Doc. 90 at 6; Doc. 92 at 7. Defendant cites to *Wottlin v. Fleming*, 136 F.3d 1032, 1034 n.1 (5th Cir. 1998) for the proposition that placement in a halfway house constitutes "custody." The Court notes that *Wottlin*, which dealt with the issue of whether a defendant who was released to a halfway house remained "in custody" for purposes of habeas relief, is largely inapplicable here. *See id.* More importantly, whether or not placement at a halfway house is considered "custody" is not dispositive. Defendant faces the same obstacle that hindered his June motion for home confinement in North Carolina. This Court has no authority to order the BOP to place Defendant at a halfway house prior to his release date. It is well-settled law that a prisoner has no constitutional right to confinement in a particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002). The BOP retains complete discretion to determine where federal prisoners are housed. *See* 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (citing *Moresco v. United States*, No. 92-1108, 1992 WL 372399, at *2 (10th Cir. Dec. 10, 1992) (unpublished)). Accordingly, because the Court lacks authority to designate the place of a

---

[2]    The Court regrettably notes that halfway houses in the state of New Mexico, like most communal living facilities, have been disproportionately affected by COVID-19. *See, e.g.*, Colleen Heild, *La Pasada Halfway House reports COVID-19 outbreak*, ALBUQUERQUE J., https://www.abqjournal.com/1491054/la-pasada-halfway-house-reports-covid19-outbreak-ex-of-the-76-people-living-in-the-facility-more-than-50-have-tested-positive-all-are-asymptomatic.html (last updated Aug. 28, 2020) (last visited Mar. 15, 2021).

prisoner's confinement, the Court must deny Defendant's request for immediate placement in a halfway house.

### III.    Defendant's request for compassionate release

Now the Court turns to Defendant's request for compassionate release. "Generally, a federal court may not modify a term of imprisonment once imposed."  *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain "compassionate release" sentence modifications under § 3582(c)(1)(A). Before the First Step Act of 2018 was enacted, only the BOP could seek compassionate release. First Step Act of 2018, Pub. Law 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i) now permits a court to consider a compassionate release motion filed by a defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" As discussed above, the Government concedes that Defendant has met his exhaustion requirement.

If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). In this instance, having considered the § 3553(a) factors and the Sentencing Commission's applicable policy statement, the Court cannot make a

finding that "extraordinary and compelling reasons" warrant a reduction in sentence. Consequently, it must deny Defendant's motion for compassionate release.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding. . . the appropriate use of. . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress further tasked the Sentencing Commission with defining the phrase "extraordinary and compelling reasons," and § 994(t) specifically states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

18 U.S.C. § 994(t). Although there is a growing consensus of circuits holding that district courts are no longer bound by the policy statements of the Sentencing Commission when reviewing defendant-initiated motions, the Tenth Circuit has not joined this wave. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).   As recently as January 5, 2021, the Tenth Circuit has applied the policy statement in unpublished opinions. *See United States v. Gieswein*, 832 Fed. Appx. 576, 577 (Mem.) (10th Cir. Jan. 5, 2021) (unpublished). Therefore, in the light of the Tenth Circuit's silence, this Court will continue to apply the applicable policy statement, U.S.S.G. § 1B1.13.

Section 1B1.13 provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that:

(i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and

(iii) "the reduction is consistent with this policy statement."

U.S.S.G. § 1B1.13. The application note specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." As relevant here, this standard is met if the defendant is "suffering from a serious physical or medical condition. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. n.1(A)(ii).

Defendant claims he suffers from what he terms a "chronic lung disease," which could make him more susceptible to contracting COVID-19. Doc. 90 at 10. As evidence, Defendant submits the following exhibits: (1) documentation of two asthma attacks, one of which occurred in November of 2016 and the other in September of 2017; (2) his BOP medical plan, which assigns him a status of "CARE-3 – Unstable, Complex Chronic Care"; and (3) a label from an asthma medication he currently uses. *See* Docs. 90 & 92. He argues that, taken together, this evidence establishes that he suffers from moderate to severe asthma. The latest guidance from the Centers for Disease Control and Prevention (the "CDC") advises that individuals with moderate to severe asthma *might be* at an increased risk for severe illness related to COVID-19. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, (last updated Feb. 22, 2021) (last visited Mar. 15, 2021). Here, Defendant has already successfully recovered from COVID-19 while incarcerated, despite his history with moderate to severe asthma. Doc. 91 at 9–10; Doc. 92 at 3–4. This successful recovery also demonstrates that Defendant's asthma has not substantially diminished his ability to care for himself while incarcerated. The Court is not unsympathetic to Defendant's description of his COVID-19 infection from April of 2020; however, the Court finds

it telling that Defendant does not provide any discussion or commentary on the general state of his health post-recovery. Neither the motion nor the reply brief alert the Court to any worsening of his health since the spring of 2020.

Defendant further argues that he is eligible for compassionate release due to the risk of reinfection. He states that "[n]o available data can determine what will happen to me if I contract this virus again, or its mutating strains." Doc. 92 at 7. This generalized anxiety does not give rise to "extraordinary and compelling reasons" under the policy statement. *Cf. United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release). Even after a generous reading of Defendant's argument, untethered from the policy statement's general framework, the Court cannot find that the risk of reinfection rises to the level of "extraordinary and compelling." The CDC maintains that "cases of reinfection with COVID-19 have been reported but remain rare." CDC, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020) (last visited March 15, 2021).  Moreover, the CDC is closely monitoring the emerging variants of the virus, and, as of March 11, 2021, North Carolina has seen only 43 cases caused by variant strains. CDC, *US COVID-19 Cases Caused by Variants*, https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html (last updated Mar. 11, 2021) (last visited Mar. 15, 2021). Based on this current information, the Court concludes that Defendant's risk for reinfection does not give rise to an extraordinary and compelling reason warranting a reduction in his sentence. This conclusion is strongly supported by the BOP's implementation of its COVID-19

Action Plan and the agency's continued administration of COVID-19 to the federal prison population.[3]

The Court has determined that Defendant has failed to demonstrate an "extraordinary and compelling reason" for reduction of his sentence.  Thus, there is no reason to examine the remaining policy statement factors, even assuming Defendant can show he is not a danger to the community and that the § 3553 factors now support a shorter sentence.

The Court also need not further consider the "catch-all" provision of § 1B1.13, which states that release may be appropriate based on "other reasons," that is, "extraordinary and compelling reason[s]" either by themselves or in combination with a defendant's medical condition.  § 1B1.13, cmt. n.1(D).  While that provision states that a determination as to "other reasons" is to be made by the Director of the BOP, following the First Step Act,  the Tenth Circuit has implicitly acknowledged that courts were authorized to make a determination under § 1B1.13, cmt. n.1(D). *See United States v. Saldana*, 807 Fed. Appx. 816, 819-20 (10th Cir. 2020). As discussed above, the Court has broadly construed and considered Defendant's arguments, none of which establish circumstances that would warrant compassionate release pursuant to § 3582(c)(1)(A).

## CONCLUSION

**Therefore**, for the reasons discussed above, Defendant's motion (Doc. 90) is **DENIED**.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]      A description of the BOP's COVID-19 Action Plan can be found in the Government's response brief. Doc. 91 at 2–5. The BOP website maintains a regularly updated resource page outlining into the safety measures currently in place and providing updated statistics on the ongoing vaccine administration. BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (last visited Mar. 15, 2021). The BOP reports that, as of March 15, 2021, a total of 1,369 inmates at Butner have completed their inoculations. *Id.*